Commonwealth *v.* Sheehan, Appellant.

Submitted January 5, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Edward Rosenwald,* for appellant.

*A. Thomas Parke, III,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, December 20, 1971:

In 1963 appellant, not represented by counsel, pleaded guilty to driving under the influence of intoxicating liquor in Chester County, Pennsylvania. See Act of April 29, 1959, P. L. 58, §1037, 75 P.S. §1037. The penalty imposed was a fine of $200, which appellant subsequently satisfied.

In 1968 appellant was arrested for driving under the influence of intoxicating liquor in Lancaster County, Pennsylvania. Following his indictment, but prior to trial,[1] appellant was informed by letter from Judge W. G. JOHNSTONE, JR., that "the invariable policy of the Lancaster County Court is to impose a sentence of $200 fine, costs of prosecution, and three months in Lancaster County Prison on all second offenders charged with operating a motor vehicle under the influence of intoxicating liquor."

Immediately thereafter, appellant filed a petition under the Post Conviction Hearing Act[2] in the Chester County Court of Common Pleas, challenging the validity of his 1963 drunken driving conviction, asserting that he had been unconstitutionally denied his right to counsel. That court, without holding a hearing, denied relief. The Superior Court affirmed the denial of relief. *Commonwealth v. Sheehan,* 216 Pa. Superior Ct.

---

[1] The trial on the 1968 charge has been continued pending the result of the instant proceeding.

[2] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq.

26, 260 A. 2d 496 (1969). Judge HOFFMAN filed a dissenting opinion, joined by Judge SPAULDING. We granted allocatur to review the involved issues arising out of this proceeding.

Both the Court of Common Pleas and the Superior Court held appellant to be ineligible for relief because: (a) he did not have the necessary status—i.e., being then incarcerated in Pennsylvania or on parole or probation—to be eligible for relief under §3 of the Post Conviction Hearing Act ("the Act"); and (b) the issue was moot because appellant had completely satisfied the sentence on his 1963 conviction.[3] The Superior Court specifically distinguished *Commonwealth ex rel. Ulmer v. Rundle,* 421 Pa. 40, 218 A. 2d 233 (1966) and *Commonwealth ex rel. Ackerman v. Russell,* 209 Pa. Superior Ct. 467, 228 A. 2d 208 (1967), cases holding the doctrine of mootness not applicable *per se* to collateral attacks directed to sentences already satisfied. Setting this case apart, in the view of the Superior Court, was the hiatus in point of time between the allegedly invalid sentence already satisfied and the imposition of a subsequent sentence.

Appellant contends that even if his claim is not cognizable under the Act, his petition should be treated as one for a writ of coram nobis or habeas corpus; that the mootness doctrine does not apply to the present case; and that he was unconstitutionally denied counsel at the 1963 guilty plea proceeding.

## I.

### Availability of Writ of Coram Nobis

The Post Conviction Hearing Act provides that to be eligible for relief thereunder a petitioner must be

---

[3] See *Commonwealth ex rel. Ulmer v. Rundle,* 421 Pa. 40, 218 A. 2d 233 (1966); *Commonwealth ex rel. Ackerman v. Russell,* 209 Pa. Superior Ct. 467, 228 A. 2d 208 (1967); *Commonwealth v. Garner,* 204 Pa. Superior Ct. 227, 203 A. 2d 333 (1964).

"incarcerated . . . or on parole or probation.[4] Clearly, appellant has no such status as a result of the 1963 drunken driving conviction. The intent of the Act, however, was not to abolish the common law remedies of habeas corpus and coram nobis, but rather to promulgate an exclusive, well-defined procedure for the presentation of those grievances set forth in the Act by an aggrieved person who is under the duress of punishment, whether in prison or on parole or probation. See *U. S. ex rel. Wakeley v. Pennsylvania,* 257 F. Supp. 644 (W.D. Pa. 1966); *accord, Moss v. Pennsylvania,* 257 F. Supp. 643 (M.D. Pa. 1966); *U. S. ex rel. Miller v. Russell,* 256 F. Supp. 857 (M.D. Pa. 1966). All claims previously cognizable on a common law writ, in circumstances not covered by the terms of the Act, may still be litigated by means of the common law writ. *Commonwealth v. Tinson,* 433 Pa. 328, 331, 249 A. 2d 549 (1969).[5] Merely because one is not incarcerated, on parole or probation does not *per se* preclude a collateral attack on his conviction. Appellant asserts that his petition presents a proper matter for review under the ancient writ of error known as coram nobis.[6]

The writ of coram nobis is generally available to challenge the validity of a judgment based on facts not before the court when the judgment was entered. *Com-*

---

[4] Section 3 of the Post Conviction Hearing Act, *supra,* note 2.

[5] Section 2 of the Post Conviction Hearing Act, *supra,* note 2, provides as follows: "This act establishes a post-conviction procedure for providing relief from convictions obtained and sentences imposed without due process of law. The procedure hereby established shall encompass all common law and statutory procedures for the same purpose that exist when this statute takes effect, including habeas corpus and coram nobis. However, nothing in this act limits the availability of remedies in the trial court or on direct appeal."

[6] The Commonwealth in its brief states that it has no quarrel with this contention, but argues that petitioner is not entitled to relief in any case.

*monwealth v. Mathews,* 356 Pa. 100, 51 A. 2d 609 (1947) ; *Commonwealth v. Harris,* 351 Pa. 325, 41 A. 2d 688 (1945). Although this Court has previously adverted to the limited scope of coram nobis, especially in light of the then burgeoning employment of the writ of habeas corpus, *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 11-12, n. 15, 213 A. 2d 613 (1965), situations have arisen where the writ was granted. See *Commonwealth v. Kurus,* 371 Pa. 633, 634-35, 92 A. 2d 196 (1952). See also A. Freedman, *The Writ of Error Coram Nobis,* 3 Temp. L.Q. 365, 372 (1928). See Diggins, *Coram Nobis in Pennsylvania,* 33 Temp. L.Q. 1 (1959). Moreover, after noting that courts should act by whatever procedural channels appear necessary to do justice when the record makes plain a right to relief,[7] the United States Supreme Court in *United States v. Morgan,* 346 U.S. 502, 505, 98 L. Ed. 248, 253 (1954) held that, on an allegation of the denial of right to counsel, coram nobis would lie to challenge a conviction, the sentence of which had been fully satisfied. The Court laid particular emphasis on a quotation from 2 Tidd's Practice (4th Am. Ed.) 1136, 1137, which stated that coram nobis is available to cure errors of fact or process. See *Commonwealth v. Sheehan, supra,* at 32 (dissenting opinion) and cases cited therein. Likewise, the Court in *Morgan* noted that coram nobis as applied in American jurisdictions had not been confined strictly to matters of fact. The Court's conclusion commends itself to us as an appropriate and salutary application of this ancient writ in the contemporary setting: "Where it cannot be deduced from the record whether counsel was properly waived, we think, no other reme-

---

[7] *Commonwealth v. Kurus, supra,* at p. 635, discussing the proper procedural channel for collaterally contesting a conviction stated: "We do not predicate anything on the possible in applicability of the procedure now resorted to by petitioner. If his case were meritorious, we would readily fit the proper remedy to the facts."

dy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard. . . ." 346 U.S. at 512.

In sum we hold that appellant's petition under the Act may properly be considered and treated as a petition for a writ of error coram nobis, and that the fact that he is not now incarcerated (or on parol or probation) is not, by itself, a bar to the relief he seeks.

## II.

### Whether Satisfied Sentence Renders Alleged Invalidity of Conviction Moot

The issue remains whether the hearing court properly declined to consider appellant's petition on the ground that it presents a moot question. The Supreme Court of Delaware, in *Gural v. State*, 251 A. 2d 344 (1969), has recently stated that there are three prevalent views relating to the doctrine of mootness as applied to sentences already served: (1) the "traditional" view that satisfaction of the contested sentence, *per se*, renders the case moot; (2) the "liberal" view that the petitioner's interest in clearing his name, *per se*, permits review of or attack upon the conviction; and (3) the modified traditional view that the satisfaction of the sentence renders a case moot unless, in consequence of the conviction and sentence, the petitioner suffers collateral legal disabilities or burdens, surviving the satisfaction of the sentence, sufficient to give petitioner standing to attack his conviction. See *Annot.*, 9 A.L.R. 3d 462. See generally *Postrelease Remedies for Wrongful Conviction*, 74 Harv. L. Rev. 1615 (1961); *Mootness and Collateral Consequences in Criminal Appeals*, 28 U. Chi. L. Rev. 363 (1960-1).

Prior to this Court's decision in *Commonwealth ex rel. Ulmer v. Rundle*, 421 Pa. 40, 218 A. 2d 233 (1966),

Pennsylvania followed the so-called traditional rule. *Commonwealth v. Garner,* 204 Pa. Superior Ct. 227, 203 A. 2d 333 (1964). The *Ulmer* decision, however, introduced what we shall here refer to as a "collateral criminal consequences" rule, which might well be deemed a restricted version of viewpoint (3) in the Delaware formulation described above. The doctrine of mootness was there held not to apply where one could suffer the consequence of having sentences begin and end later than they normally would, had the sentencing court been aware that a previously imposed, but unexpired, sentence was invalid. Although the Superior Court would limit *Ulmer* to its specific factual setting, i.e., where petitioner is serving a sentence illegally lengthened by and immediately following (thus with no hiatus) an invalid sentence, we think the decision is properly read as allowing an attack on a satisfied sentence which is shown to affect directly any subsequent criminal prosecution or conviction.

Although the present case does not involve a recidivist statute,[8] the announced policy of the Court of Common Pleas of Lancaster County is the equivalent. It is clear that should appellant be found guilty of the charge presently pending against him in that county, he will be classed as a second offender and will suffer a harsher penalty, including imprisonment, than would be imposed absent the prior (allegedly invalid) drunken driving conviction.[9] Such a result presents the possible

---

[8] In *U. S. Morgan, supra,* where the United States Supreme Court held that review of an already completed sentence did not present a moot issue, it was noted that the appellant therein had received a longer sentence on a subsequent conviction under the terms of a state recidivist statute providing for longer terms for second offenders.

[9] In *St. Pierre v. United States,* 319 U.S. 41 (1943), a case in which the petitioner had completely satisfied his sentence before the case reached the Supreme Court, the appeal was held to be moot because the petitioner could not show collateral criminal conse-

collateral criminal consequences which preclude application of the general rule of mootness to the collateral attack on appellant's initial conviction.

## III.

### Right to Counsel in Non-Felony Cases

At this juncture, having decided that appellant is not foreclosed from collaterally attacking his 1963 conviction for drunken driving, we would normally remand to the lower court for an evidentiary hearing and would not herein discuss the substantive issues raised by appellant. Since, however, the case before us raises a novel issue heretofore unsettled in this Commonwealth, and with which the lower court will be immediately confronted on remand, we shall discuss that issue for the guidance of the lower court and in the hope of obviating a further appeal.

Appellant claims that his 1963 drunken driving conviction is invalid because he was denied the right

---

quences as a result of the conviction. The Court stated that the moral stigma emanating from a conviction was not sufficient to preserve a justiciable case or controversy. Eleven years later in *U. S. v. Morgan*, 346 U.S. 502, 98 L. Ed. 248 (1954), *supra*, the doctrine of mootness was not applied, apparently because the petitioner had been sentenced as a second offender. *Parker v. Ellis*, 362 U.S. 574, 4 L. Ed. 2d 963 (1960) added little to the holdings of the two previous cases except that the dissent by four members of the Court (WARREN, C. J., joined by BLACK, DOUGLAS and BRENNAN, JJ.) would preclude application of the mootness doctrine merely because of the status of one who has been convicted and the possibility of a recidivist conviction or impairment of civil liberties, economic opportunities and reputation.

Three recent Supreme Court cases, *Carafas v. LaVallee*, 391 U.S. 234, 20 L. Ed. 2d 554 (1968) ; *Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917 (1968) ; and *Street v. New York*, 394 U.S. 576, 579, fn. 3, 22 L. Ed. 2d 572, 578, fn. 3 (1969), seem to stand for the proposition that the possibility of either civil or criminal collateral consequences forecloses application of the mootness doctrine.

to counsel at the guilty plea proceedings. We have previously held that both guilty plea and sentencing proceedings are critical stages at which defendants must be afforded the right to counsel. *Commonwealth ex rel. Mullins v. Maroney,* 428 Pa. 195, 236 A. 2d 781 (1968); *Commonwealth ex rel. Johnson v. Maroney,* 416 Pa. 451, 206 A. 2d 322 (1965); *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 204 A. 2d 446 (1964). In a case such as that before us, in which the record does not affirmatively show that the accused knowingly waived his right to counsel, the burden is on the Commonwealth to establish such a waiver. *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964). Defendants, indigent or not, must be made aware of their right to counsel; indigent defendants must be informed of the right to counsel's assistance at public expense. *Id.* at 525-26; *Commonwealth ex rel. Murphy v. Rundle,* 210 Pa. Superior Ct. 524, 233 A. 2d 594 (1967).

While our cases have not noted a differentiation in the right to counsel based upon whether the offense charged is a misdemeanor or a felony, all those cases in which we have declared a right to counsel have involved felonies. Likewise, the United States Supreme Court in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799 (1963), extending the Sixth Amendment right to counsel to the states, was concerned with a felony offense. While the language of the *Gideon* opinion is broad enough to apply to all criminal offenses, the Supreme Court has never specifically passed upon the right to counsel in a misdemeanor prosecution in a state tribunal. [10]

---

[10] The United States Supreme Court recently granted certiorari in a case presenting this issue decided by the Supreme Court of Florida, 236 So. 2d 442, *Argersinger v. Hamlin,* No. 5798, cert. granted 8 Cr. L. 4154. At least one court, awaiting disposition of this issue by the Supreme Court and without itself rendering a

The Supreme Judicial Court of Maine, in *Newell v. State*, Me. , 277 A. 2d 731 (1971), notes that the divisions in the cases on right to counsel do not necessarily fall on a strict misdemeanor-felony distinction. The court identified three viewpoints on the subject of a federally mandated constitutional right to counsel: (1) that the right extends only to felony offenses; (2) that the right exists in any criminal proceeding in which an accused may be deprived of his liberty; and (3) that the right exists not only in the case of any felony but also in the case of any "serious" misdemeanor in which the possible sentence exceeds six months imprisonment. The Maine court, relying extensively upon the Federal Rules of Procedure for Trials of Minor Offenses Before Magistrates,[11] held there was an absolute right to counsel in the third category of cases described above.

The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services (Approved Draft 1968), §4.1, pp. 37-40, recommends an absolute right to counsel in all proceedings punishable by loss of liberty regardless of their denomination as felonies, misdemeanors, or otherwise, except those types of offenses for which such punishment is not likely to be imposed. Thus it falls in the second category of the Maine formulation.

definitive decision on the question, has exercised its supervisory power to require, prospectively only, legal representation of indigents accused of any jailable offense. *State v. Borst*, 278 Minn. 388, 154 N.W. 2d 888 (1967).

[11] These rules were promulgated by the United States Supreme Court on January 27, 1971, and require appointment of counsel for indigent defendants charged with "minor offenses" other than "petty offenses". The United States Code (18 U.S.C. §1) and the Criminal Justice Act of 1964, 18 U.S.C. §3006A define petty offenses as being those in which the possible penalty does not exceed a $500 fine or 6 months imprisonment or both.

A fourth approach to this problem would be to hold that the right to counsel obtains in *"all criminal prosecutions"*, as the Sixth Amendment literally requires.[12] Few, if any, jurisdictions, however, have been willing to go so far, for even traffic violations and other summary or petty offenses fall within the inclusive rubric of the constitutional phrase. To apply the right with no discrimination would be both to belittle the right and create an impossible administrative situation. In this respect we agree with Judge Wisdom of the 5th Circuit Court of Appeals (who for himself would adopt the ABA standard, *supra*) in his opinion in *James v. Headley*, 410 F. 2d 325 (5th Cir. 1969). Said Judge Wisdom: "[I]f accuseds should be provided counsel in all petty offense cases, the great constitutional right to counsel could be carried to absurdity; city and state systems of justice could be so overburdened as to break down. There are simply not enough lawyers to go around. Some pragmatic solution must be found so that even a law violator will be willing to admit that his pulling flowers in the park or his parking overtime are not important enough to require the city or state to furnish him a lawyer. Some sort of 'serious offense' rule or 'significant penalty' rule would be useful in providing certainty and reducing the heavy burden of providing counsel. The problem is how to give judicial recognition to exceptions when the Constitution does not in terms allow exceptions." *Id.* at 334.[13]

---

[12] Article I, Section 9 of the Constitution of Pennsylvania likewise guarantees an accused the right to counsel in "all criminal prosecutions."

[13] Although the author of the court's opinion in *James v. Headley*, supra, Judge Wisdom, spoke only for himself as to the view that the right to counsel should be recognized if the offense involved "may result in the loss of liberty for any period of time". The majority of the court (Godbold and Simpson, JJ.) were unwilling to go so far, and adhered to the holding of the court in *Harvey v. Mississippi*, 340 F. 2d 263 (5th Cir. 1965).

For purposes of this case we need not decide between offenses entailing any loss of liberty by way of punishment, and those carrying possible imprisonment of sufficient length to mandate a jury trial, viz., six months. *Baldwin v. New York*, 399 U.S. 66, 26 L. Ed. 2437 (1970). The offense of drunken driving in Pennsylvania, though a misdemeanor, is punishable by a fine of $100 to $500 and imprisonment up to three years, or both. See Act of April 29, 1959, *supra*, 75 P.S. §1037. We have no hesitancy in holding that a person charged with that offense is entitled to representation by counsel, and, if indigent, that such representation be without cost to him; it is not necessary that the offense be in the felony category.[14]

We will remand this case to the Common Pleas Court of Chester County to hold an evidentiary hearing to determine whether appellant knowingly waived his right to counsel. At this hearing it will be the Commonwealth's burden to show such knowing waiver.

Judgment reversed and case remanded with instructions.

Mr. Chief Justice BELL dissents.

---

[14] That no valid differentiation can be made on a strictly felony-misdemeanor basis is illustrated by the case at bar. Appellant can be imprisoned for three years for the misdemeanor of drunken driving, whereas the minimum sentences for a number of felonies in Pennsylvania must be for less than three years. (For example, the crime of receiving stolen property, Act of June 24, 1939, P. L. 872, §817, as amended, 18 P.S. §4817, for which the maximum sentence is five years, can carry no greater maximum than two and one half years. Act of June 19, 1911, P. L. 1055, §6, as amended, 19 P.S. §1057.) Another illustration is the crime of bribery in athletic contests; although a misdemeanor, it carries a fine of up to $10,000 and imprisonment up to ten years, or both. See Act of June 24, 1939, P. L. 872, §614, as amended, 18 P.S. §4614.